******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# TOWN OF SOUTH WINDSOR ET AL. *v.*
# KRISTIN LANATA ET AL.
## (SC 20587)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiffs, the town of South Windsor and its zoning enforcement officer,
O, sought an injunction and the assessment of fines against the defendant
homeowner, who was using her property to store salvage and debris
that she had obtained in connection with a cleaning business that she
operated. O notified the defendant in 2014 that she was in violation of
the town's blight ordinance and zoning regulations, and ordered her to
remove the debris from her property. In December, 2016, a fire occurred
on the property, and the fire marshal subsequently initiated an arson
investigation. In light of the pending investigation, both the police and
the defendant's insurance carrier instructed the defendant not to touch
or remove anything from the property. Thereafter, on February 24, 2017,
O issued the defendant a notice of violation, informing her that her
property was in violation of the town's blight ordinance and directing
her to remove the debris, as well as a cease and desist order, which
identifed the defendant's creation of a junkyard in a residential zone as
a zoning violation and directed her to stop depositing material on her
property. The defendant did not appeal from either notice or the cease
and desist order, and the plaintiffs commenced the present action in
an effort to compel her compliance, alleging that the defendant had
violated the town's blight ordinance and zoning regulations. Pointing to
the instructions she received not to touch or remove anything during
the arson investigation, the defendant raised the special defense of
legal impossibility, which the trial court ultimately failed to credit. With
respect to the zoning claim, the trial court found that the defendant had
been wilfully violating the town's zoning regulations since at least the
date on which the cease and desist order was issued. Accordingly, the
trial court imposed a daily fine pursuant to statute (§ 8-12), commencing
on February 24, 2017. The trial court also issued an injunction, precluding
the defendant from, inter alia, storing salvage on her property. On appeal,
the Appellate Court concluded, inter alia, that the trial court had abused
its discretion in imposing the fines because, although it was undisputed
that the defendant was prohibited from removing items from her prop-
erty for some period of time following February 24, 2017, the trial court,
in assessing the fines, had failed to consider the effect of the arson
investigation on the defendant's ability to comply with the cease and
desist order. Because the trial court made no finding as to the precise
date the defendant regained control of her property, the Appellate Court
remanded the case for a new trial on the zoning violation claim and
affirmed the trial court's judgment in all other respects. On the granting
of certification, the plaintiffs appealed to this court. *Held* that the Appel-
late Court improperly remanded the case for a new trial as to liability,
rather than a proceeding limited to damages, in connection with the
plaintiffs' zoning violation claim: because there was no dispute remaining
regarding the defendant's liability for the zoning violation, the only
question pertained to the effect of the defendant's legal impossibility
defense in relation to the trial court's assessment of fines under § 8-12,
which was a factual matter within the province of the trial court and
discrete from its underlying finding of liability; accordingly, this court
reversed in part the Appellate Court's judgment and remanded the case
with direction to reverse the trial court's judgment only as to its assess-
ment of fines and remedies in connection with the zoning violation
claim, and to remand the case to the trial court for further proceedings
as to damages and remedies.

Submitted on briefs June 21—officially released October 1, 2021*

*Procedural History*

Action seeking, inter alia, an injunction ordering the defendants to take certain corrective action to bring their real property into compliance with town ordinances and zoning regulations, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the defendant Michael Lanata was defaulted for failure to plead; thereafter, the case was tried to the court, *Moukawsher, J.*; judgment for the plaintiffs, from which the named defendant appealed to the Appellate Court, *Alvord, Prescott* and *DiPentima, Js.*, which reversed in part the trial court's judgment and remanded the case for a new trial, and the plaintiffs, on the granting of certification, appealed to this court. *Reversed in part*; *further proceedings.*

*Richard D. Carella* filed a brief for the appellants (plaintiffs).

*Edward C. Taiman, Jr.*, filed a brief for the appellee (named defendant).

*Opinion*

ROBINSON, C. J. The sole issue in this certified appeal is whether the Appellate Court properly remanded this case to the trial court for a new trial, rather than a proceeding limited to damages, after reversing in part the judgment of the trial court, which assessed a fine and imposed injunctive relief for certain zoning violations pursuant to General Statutes § 8-12.[1] The plaintiffs, the town of South Windsor (town) and its zoning enforcement officer, Pamela Oliva, appeal, upon our grant of their petition for certification,[2] from the judgment of the Appellate Court reversing in part the judgment of the trial court in their favor and remanding the case for a new trial on count two of their complaint. *South Windsor* v. *Lanata*, 203 Conn. App. 89, 92, 115, 247 A.3d 626 (2021). On appeal, the plaintiffs claim that, after concluding that the trial court had improperly assessed a fine on the named defendant, Kristin Lanata,[3] pursuant to § 8-12 for zoning violations for a period of time that she was under lawful orders not to disturb her property because of an ongoing fire investigation, the Appellate Court improperly remanded the case for a new trial on that count, rather than a proceeding limited to damages. Because there is no remaining dispute as to the defendant's liability for the zoning violations, we reverse the judgment of the Appellate Court in part.

The record reveals the following facts and procedural history relevant to this certified appeal, much of which is set forth in the Appellate Court's opinion.[4] "The defendant, who operates a business in which she is hired by lenders to clean personal property out of homes on which they have foreclosed, is the owner of property located at 460 Miller Road in South Windsor (property). For years, the defendant used the property to sort, store, and dispose of salvage she obtained in her business." *South Windsor* v. *Lanata*, supra, 203 Conn. App. 92. In May, 2014, and October, 2014 respectively, Oliva notified the defendant that she was in violation of the town's blight ordinance and zoning regulations, and ordered the defendant to remove the accumulated material and debris from the property. Id., 92–93.

Thereafter, in December, 2016, a fire occurred at the property that "reduced [the house] to a burned out shell, and the back lawn of the property was strewn with salvage from the inside of the house. The fire marshal for the town made an accusation that the fire was the result of arson, which claim, following an investigation, was ultimately disproven." Id., 94–95.

"By notice of violation dated February 24, 2017, Oliva informed the defendant that the property was in violation of the town's blight ordinance, specifically the sections defining a blighted structure, dangerous structure, and nuisance. The notice directed the defendant to

'[r]emove the debris and unregistered vehicles from the property and [to] correct all damage to the building, including but not limited to the roof, exterior walls, windows and supporting structures . . . .' " (Footnote omitted.) Id., 95–96. "Oliva also issued, and the defendant received, a February 24, 2017 cease and desist order identifying a zoning violation at the property," namely, the creation of a junkyard in a residential zone. Id., 96. The defendant did not appeal from Oliva's notices of blight and zoning violations. Id., 96–97.

"The plaintiffs instituted this action on October 30, 2017. The plaintiffs filed an amended two count complaint dated January 25, 2019 (operative complaint). The first count alleges that the defendant violated the [town's] blight ordinance . . . . Specifically, the plaintiffs allege[d] that the defendant 'ha[d] not complied with the town's notices' and had 'continue[d] to accumulate more debris and materials' at the property. In the second count, the plaintiffs allege that the defendant violated [the town's zoning regulations] by storing 'discarded or second-hand material creating a junkyard.' In their request for relief, the plaintiffs sought '[a]n injunction ordering the [defendant] to perform immediately the corrective action pursuant to the notices of violation and [the] cease and desist order to bring the property in compliance with the blight ordinance and zoning regulations.' The plaintiffs additionally sought, inter alia, '[a] fine of $100 per day' as provided for in the blight ordinance, '[a] fine of $100 per day as provided for in . . . § 8-12,' relative to violations of zoning regulations, and attorney's fees and costs. The defendant filed an answer and special defenses on January 31, 2019. The plaintiffs filed their reply on February 1, 2019." (Footnote omitted.) Id., 97–98.

After a three day court trial, the trial court issued a memorandum of decision that, with respect to the second count of the operative complaint that is at issue in this certified appeal,[5] "first found that 'for around five years [the defendant] has been using her residentially zoned home . . . to run a junk or salvage business.' It stated that, although the defendant takes some personal property that she cleans out of foreclosed homes to storage facilities, she also takes material to her property and sorts it on her lawn. She then 'sells some, discards some, and keeps some.' The court found that, '[o]ver the years, the front and right side[s] of her house have been regularly strewn with things and parts of things that appear to come and go.' The court stated that, although the defendant no longer lives at the property, she continues to be there most days and that she stores equipment and sorts salvage there.

"The court found that the defendant had been using her property for years to operate her business in violation of [the town's zoning] regulations, which identifies the permitted uses of a residential property. The court

stated that whether one considered her use of the property as running a junkyard or a salvage operation, neither use is permitted in a residential zone." Id., 98–99.

"The court . . . impose[d] fines for the defendant's violation of the zoning regulations. It declined to impose fines dating back to the [October, 2014] notice, given [certain] evidence suggesting that the defendant had not received that notice. The court found that the defendant wilfully had violated the town's zoning regulations since at least February 24, 2017, the date of the cease and desist order. The court credited testimony of neighbors that the defendant continued to deposit and sort material at the property even up to the date of trial, and it found not credible the testimony of the defendant that she had not brought any new material to the property since the 2016 fire.

"Pursuant to § 8-12, the court '[chose] a per diem fine of $175 per day, running from February 24, 2017, to [the] date [of its memorandum of decision] and round[ed] the total to an even $125,000.' . . . In setting the amount of the daily fine, the court considered . . . the defendant's 'lack of candor and the length of time since 2017 in which she has violated the peace of this residential neighborhood,' the loss of the defendant's home and her claims of financial hardship, the defendant's claim 'that she has been financially handicapped by the town's claim against her insurance proceeds and what proved to be baseless accusations by the fire marshal of arson on her property.' The court found that the hardship faced by the defendant in cleaning up the property did not justify her continuing to operate part of her business on the property.

"The court also enjoined the defendant from 'parking overnight or storing for any period of time, commercial vehicles, machinery, tools or other equipment she uses for business purposes . . . unloading, sorting, storing, or disposing of any salvage or other personal property except that she may store there personal property that is currently being used for the sole purpose of maintaining that property . . . [and] maintaining on the lawns of the property any personal property not currently being used for its intended purpose.' The court indicated that it would 'separately entertain a motion for attorney's fees as provided by the statute for wilful violations.' It stated that it would not [render] judgment until the resolution of any attorney's fees motion." (Footnotes omitted.) Id., 99–101. Subsequently, the trial court granted the plaintiffs' motion for attorney's fees and costs. Id., 101.

The defendant appealed from the judgment of the trial court to the Appellate Court. With respect to the claims relevant to this certified appeal, the defendant argued that the trial court improperly "fail[ed] to conclude that she was justified in not cleaning the property following her receipt of the February 24, 2017 cease and

desist order on the basis that she 'had been instructed by both the Connecticut State Police and her insurance carrier not to touch or remove any of the personal property located in the backyard,'" or the structures themselves, given the pending arson investigation into the December, 2016 fire. Id., 108–109; see id., 110. The Appellate Court described this claim, raised under the special defense of "'legal impossibility,'" as one that "essentially challenges the trial court's imposition of fines for the time period during which she was under orders not to disturb the property." Id., 109–10. The Appellate Court concluded that the trial court had abused its discretion by imposing fines because, although it "acknowledged and considered the defendant's 'claim that she has been financially handicapped by the town's claim against her insurance proceeds and what proved to be baseless accusations by the fire marshal of arson on her property,'" it "did not . . . factor into its penalties assessment the effect of the arson investigation on the defendant's ability to comply with the February 24, 2017 cease and desist order. By way of that order, the defendant was directed to 'cease the deposition of discarded and/or second-hand material on the property.' Because the record contains undisputed evidence, and the plaintiffs' counsel acknowledges that the defendant was prohibited for some period of time following February 24, 2017, by her insurer and the police from removing items from the property, [the Appellate Court] conclude[d] that the [trial] court [had] abused its discretion in imposing fines beginning on February 24, 2017." Id., 112. Given that, "as an appellate tribunal, [it] cannot find facts," the Appellate Court determined that it was "not at liberty to resolve the question of precisely what date the defendant regained control of her property following the conclusion of the police and insurance investigations. Accordingly, *a remand to the trial court for a new trial on the zoning violation* [*was*] *necessary*." (Emphasis added; internal quotation marks omitted.) Id. The Appellate Court further determined that it was necessary to reverse the attorney's fees award and injunction that "flow from the judgment in favor of the [plaintiffs]" in connection with that count.[6] Id., 112–13.

The Appellate Court, therefore, rendered judgment reversing in part the judgment of the trial court and remanding the case for a new trial "as to count two alleging a zoning violation" and affirming the judgment of the trial court in all other respects. Id., 115. This certified appeal followed.[7]

On appeal, the plaintiffs claim that the Appellate Court improperly ordered a new trial, given the trial court's unchallenged finding that the defendant had violated § 8-12. Asserting that the "only issue [that] remains is damages," the plaintiffs argue that they "should not be forced to retry the entirety of their case when they have proven both [the defendant's] liability and the time for

which fines should be assessed [in the absence of] proof of [the defendant's] special defense" of legal impossibility. They emphasize that proof of the special defense remains with the defendant. Relying on this court's decision in *Gelinas* v. *West Hartford*, 225 Conn. 575, 626 A.2d 259 (1993), for the proposition that the scope of penalties and injunctive relief to be imposed under § 8-12 are discretionary matters that are severable from liability, the plaintiffs further contend that, under *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 161 A.3d 1227 (2017), the "only issues on remand should be the amount of the judgment in light of the defendant's legal justification defense and limitation on the amount of the fine set forth in . . . § 8-12." Citing no case or statutory law or otherwise challenging the authorities relied on by the plaintiffs, the defendant argues in response that the Appellate Court properly ordered a new trial "because there is no evidence in the record" with respect to when she was notified that she could reenter and clean up her property given the conclusions of the state police and insurance investigations. We agree with the plaintiffs and conclude that the Appellate Court improperly ordered a new trial as to liability on the zoning violation count, and we further conclude that the proceedings on remand are limited to a determination of fines and remedies in light of the legal justification special defense.

We begin with the standard of review. "Whether the Appellate Court [correctly] determined the scope of a remand order is a question of law over which this court's review is plenary." *Channing Real Estate, LLC* v. *Gates*, supra, 326 Conn. 132.

"As a rule the issues [at trial] are interwoven, and may not be separated without injustice to one of the parties, and [a]n order restricting the issues [of a new trial] is the exception, not the rule. . . . Nevertheless, a retrial may be limited to a specific issue or issues, [when] the error as to one issue or issues is separable from the general issues . . . [and] such . . . limitation does not work injustice to the other issues or the case as a whole."[8] (Citation omitted; internal quotation marks omitted.) *Bruno* v. *Whipple*, 162 Conn. App. 186, 208, 130 A.3d 899 (2015), cert. denied, 321 Conn. 901, 138 A.3d 280 (2016), quoting *Fazio* v. *Brown*, 209 Conn. 450, 455–56, 551 A.2d 1227 (1988). It is well settled that the retrial may be limited to "the issue of damages [when] the facts found compel judgment for the plaintiff but were insufficient to show the amount of damages." *Jennings* v. *Reale Construction Co.*, 175 Conn. 16, 24, 392 A.2d 962 (1978). The new trial may also be limited to a special defense. See *Haynes* v. *Middletown*, 314 Conn. 303, 330–31, 101 A.3d 249 (2014) (remanding case to trial court for new trial as to defendant's special defense of governmental immunity and imminent harm to identifiable persons exception to that defense, rather than reinstating verdict in favor of plaintiff, given that

governmental immunity issue was never submitted to jury).

As the plaintiffs point out, our decision in *Channing Real Estate, LLC* v. *Gates*, supra, 326 Conn. 123, is instructive with respect to whether the remand to the trial court should direct a completely new trial on count two of the complaint, alleging zoning violations or, instead, be limited to a hearing as to fines and remedies. In *Channing Real Estate, LLC*, we considered whether the Appellate Court properly remanded the case to the trial court for a new trial of a contract dispute, rather than directing judgment and ordering a hearing in damages, in light of its "correct conclusion that the parol evidence rule precluded consideration of the extrinsic evidence relied on by the defendant  . . . ." Id., 132. Citing authorities holding that a remand for a decision as to liability is unnecessary when the elements are undisputed or can be determined as a matter of law from the record,[9] we observed that, "[w]hen no question of liability remains, given the undisputed facts in the record, the appropriate scope of the remand is limited to a hearing in damages." Id. We concluded that "a remand to the trial court for a new trial is unnecessary because there is no question as to the defendant's liability under the notes" insofar as "there is no dispute that each of the six notes contains the language that  . . . bars the introduction of extrinsic evidence under the . . . parol evidence rule." Id., 133–34. In so concluding, we disagreed with the Appellate Court's conclusion "that the trial court's misapplication of the law so permeated the trial court's findings that a new trial was necessary." Id., 134. We observed that the affected factual findings were limited to those that pertained to extrinsic evidence that was inadmissible as a matter of law under the parol evidence rule, rendering them "irrelevant. What remain unaffected  . . . are the trial court's findings of fact that govern the disposition of the present case as a matter of law. The only matter that remains to be litigated between the parties, therefore, is the amount of the plaintiff's damages." Id., 134–35; see id., 134–36 (rejecting claim that new trial was required because of special defense of equitable estoppel insofar as that claim was not preserved before trial court and observing that ruling rejecting special defense of fraud, which would have been exception to parol evidence rule, was unchallenged).

This court's decision in *Gelinas* v. *West Hartford*, supra, 225 Conn. 575, provides additional guidance as to the scope of the appropriate remand. In that case, this court concluded that the trial court had improperly imposed daily fines of $100 for wilful offenses under § 8-12 and reversed the judgment of the trial court with direction to vacate that fine "and to impose such civil penalties pursuant to § 8-12 as the trial court may deem appropriate in the proper exercise of its discretion." Id., 593. This court also concluded that the trial court

had improperly failed to enjoin a property owner from the unauthorized business use of his basement, observing that the "review of the record discloses that the equities . . . patently lie with the town [of West Hartford]. The record clearly reveals that [the property owner] installed commercial ventures in the basement of the subject building knowing full well that he was flagrantly violating the West Hartford zoning ordinances." Id., 596. Although this court held that "the trial court [had] abused its discretion by refusing to render judgment entitling [West Hartford] to injunctive relief from the unauthorized business use of the basement" and remanded the case "to the trial court with direction to render judgment for [West Hartford] consistent with [its] opinion," it nevertheless "[left] it to the discretion of the trial court to fashion the scope of the injunctive relief to which [West Hartford was] entitled." Id.

Having reviewed the record in the present case, we observe that no dispute remains as to the defendant's liability for the zoning violations alleged in count two of the plaintiffs' complaint. The only question concerns the effect of the legal impossibility special defense as it affects the calculation of the fines under § 8-12, with the application of that defense being limited to a certain time period between the December, 2016 fire and the conclusion of the ensuing arson investigations, the determination of which is a factual question within the province of the trial court, as the Appellate Court aptly noted. See *South Windsor* v. *Lanata*, supra, 203 Conn. App. 112. This is a discrete matter that does not affect the underlying liability finding. See, e.g., *Channing Real Estate, LLC* v. *Gates*, supra, 326 Conn. 134–35. Insofar as the plaintiffs do not seek any relief from this court pursuant to Practice Book § 84-11[10] with respect to the injunction that the Appellate Court criticized and vacated in connection with reversing the judgment as to count two in its entirety; see footnote 6 of this opinion and accompanying text; we leave it to the trial court on remand to fashion appropriate injunctive relief in connection with a proper calculation of the fines consistent with the defense of legal impossibility.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to reverse the judgment of the trial court as to count two of the complaint only as to its determination of fines and remedies, and to remand the case to the trial court for further proceedings as to damages and remedies.

In this opinion the other justices concurred.

* October 1, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 8-12 provides in relevant part: "If . . . any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful . . . use or to restrain, correct or abate such violation or to prevent the occupancy

of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. Such regulations shall be enforced by the officer or official board or authority designated therein, who shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order in writing the remedying of any condition found to exist therein or thereon in violation of any provision of the regulations made under authority of the provisions of this chapter . . . . The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists . . . shall be fined not less than ten dollars or more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars or more than two hundred fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues not to exceed a maximum of thirty days for such violation, or both; and the Superior Court shall have jurisdiction of all such offenses, subject to appeal as in other cases. . . . If the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees to be taxed by the court. . . ."

[2] We granted the plaintiffs' petition for certification, limited to the following issue: "Did the Appellate Court improperly reverse the trial court's judgment and remand for an entirely new trial when it determined only that the trial court erred in awarding (1) fines for a period of time for which the named defendant had provided evidence in support of her special defense of 'legal impossibility,' and (2) statutory fines in excess of those authorized by statute?" *South Windsor* v. *Lanata*, 336 Conn. 945, 250 A.3d 694 (2021).

[3] "Michael Lanata was also named as a defendant in this action. On February 11, 2019, Michael Lanata was defaulted for failure to plead. He is not participating in this appeal," and, like the Appellate Court, "we therefore refer to Kristin Lanata as the defendant." *South Windsor* v. *Lanata*, supra, 203 Conn. App. 91 n.1.

[4] For a more detailed rendition of the facts and procedural history of this case, along with the text of the applicable ordinances and regulations, see *South Windsor* v. *Lanata*, supra, 203 Conn. App. 92–101 and nn. 9 and 10.

[5] With respect to the first count of the complaint, the trial court found that the defendant's property violated the town's blight ordinance. See *South Windsor* v. *Lanata*, supra, 203 Conn. App. 99. The trial court declined, however, to impose any fines for the blight violation, deeming that ordinance's fine provision to be sufficiently unclear as to constitute a potential due process violation. Id.

[6] Addressing an issue that it considered likely to arise on remand, the Appellate Court also agreed with the defendant's claim that the trial court "improperly assessed a fine [in the amount of $175 per day] for the wilful violation of zoning regulations pursuant to § 8-12." *South Windsor* v. *Lanata*, supra, 203 Conn. App. 114. The Appellate Court observed that there was no evidence "that the defendant had been convicted of any offense in a criminal proceeding"; id., 115; as required by this court's decision in *Gelinas* v. *West Hartford*, 225 Conn. 575, 593, 626 A.2d 259 (1993), and its decision in *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 280, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001), which held that a criminal conviction was a predicate to the finding of wilfulness necessary to allow the imposition of fines of more than $100 per day pursuant to § 8-12. See *South Windsor* v. *Lanata*, supra, 114–15.

In a footnote, the Appellate Court briefly addressed the defendant's claim that the "injunction exceeded the scope of the relief sought by the plaintiffs" insofar as it enjoined "her from using her property to '[park] overnight or [store] for any period of time, commercial vehicles, machinery, tools or other equipment she uses for business purposes.' " *South Windsor* v. *Lanata*, supra, 203 Conn. App. 113 n.22. Deeming it unnecessary to address this claim given its remand for a new trial, the Appellate Court nevertheless described the defendant's concerns about "the scope of the injunction" as "serious," insofar as the injunction was specific to the zoning violation, and the cease and desist order imposed by the town and enforced by the injunction did not address the overnight parking of commercial vehicles. Id.

We note that the plaintiffs do not challenge the Appellate Court's (1) conclusion that the trial court improperly assessed fines at a daily rate of $175, or (2) concerns about the scope of the injunction ordered by the trial court. Accordingly, we need not address these issues further.

[7] After we granted the plaintiff's unopposed petition for certification to

appeal; see footnote 2 of this opinion; we sua sponte ordered the parties "to file simultaneous briefs of no more than ten pages . . . addressing the following": (1) "Did the Appellate Court improperly reverse the trial court's judgment and remand for an entirely new trial when it determined only that the trial court erred in awarding . . . fines for a period of time for which the named defendant had provided evidence in support of her special defense of legal impossibility, and . . . statutory fines in excess of those authorized by statute?" And (2) "Whether . . . this matter can be decided without oral argument?" (Internal quotation marks omitted.)

In their simultaneous briefs, both parties indicated that this matter is suitable for decision without oral argument. See Practice Book § 70-2. Moreover, neither party's simultaneous brief indicated that further briefing was necessary, and both filings were well under the ten page limit of our order. Having reviewed these briefs, along with the record and Appellate Court decision in this case, we have determined that the ordinary course of full briefing and oral argument is not necessary for the decision of this certified appeal. In the interest of judicial economy, we issue this opinion modifying the relief granted by the Appellate Court with respect to its new trial order.

[8] We note that, under this court's seminal decision in *Murray* v. *Krenz*, 94 Conn. 503, 507–508, 109 A. 859 (1920), reviewing courts should be even more reticent to order a new trial limited to a specific issue when a jury verdict is involved. "Ordinarily the reversal of a jury verdict requires a new trial of all the issues in the case. . . . In other words, [a]n order restricting the issues [of a new trial] is the exception, not the rule. . . . When, however, the error as to one issue . . . is separable from the general issues, the new trial may be limited to the error found, provided that such qualification or limitation does not work injustice to the other issues or the case as a whole. . . . But [when] the retrial of the single issue may affect the other issues to the prejudice of either party, the court will not exercise its discretion in limiting the new trial but will grant it de novo. . . . Thus, [t]he decision to retain the jury verdict on the issue of liability and order a rehearing to determine only the issue of damages should never be made unless the court can clearly see that this is the way of doing justice in [a] case. . . . As a rule the issues are interwoven, and may not be separated without injustice to one of the parties." (Citations omitted; internal quotation marks omitted.) *Carlson* v. *Waterbury Hospital*, 280 Conn. 125, 151–52, 905 A.2d 654 (2006); see, e.g., *Mahon* v. *B.V. Unitron Mfg.*, *Inc.*, 284 Conn. 645, 660, 935 A.2d 1004 (2007) (The court declined to limit the retrial resulting from erroneous jury instructions on the special defense of comparative negligence to that issue because it had "no way of knowing whether the jury [returned] a compromise verdict, with some of the jurors agreeing to a finding of liability only because other jurors were willing to compromise on the amount of damages. If the verdict was the product of such a compromise, the comparative negligence finding and award may have been a component of the jurors' agreement."); *George* v. *Ericson*, 250 Conn. 312, 332–33, 736 A.2d 889 (1999) (not limiting issue on remand to damages because jury verdict declining to award noneconomic damages might have been compromise); cf. *Bruno* v. *Whipple*, 162 Conn. App. 186, 207–208, 130 A.3d 899 (2015) (remanding case for hearing in damages on breach of contract claim without retrial as to liability after reversing jury verdict on special defense of waiver that trial court had improperly permitted defendant to raise), cert. denied, 321 Conn. 901, 138 A.3d 280 (2016); *Musorofiti* v. *Vlcek*, 65 Conn. App. 365, 381, 783 A.2d 36 (retrial limited to damages on wife's loss of consortium count "will not work an injustice to the parties in this case" because "[t]he parties already have litigated the plaintiff husband's claim without any argument to the trial court or to this court that the jury charge was incorrect as to his claim"), cert. denied, 258 Conn. 938, 786 A.2d 426 (2001); *Harewood* v. *Carter*, 63 Conn. App. 199, 206–207, 772 A.2d 764 (2001) (restricting retrial to count seeking punitive damages for wilful or reckless disregard of motor vehicle statutes pursuant to General Statutes § 14-295 because "[n]either party claims, and no reason exists for us to conclude, that the jury was misled or confused about liability or the compensatory damages" as to negligence count).

[9] "See *Allstate Ins. Co.* v. *Palumbo*, 296 Conn. 253, 268, 994 A.2d 174 (2010) ([t]here are times . . . when the undisputed facts or uncontroverted evidence and testimony in the record make a factual conclusion inevitable so that a remand to the trial court for a determination would be unnecessary . . .); *Waterbury* v. *Washington*, 260 Conn. 506, 583, 800 A.2d 1102 (2002) (remand for decision on unreached elements of claim is unnecessary if remaining elements can be determined as matter of law on record); *Coppola*

*Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 157 Conn. App. 139, 171–72, 117 A.3d 876 (remand for new trial was unnecessary when all elements of cause of action for breach of contract had been proven), cert. denied, 318 Conn. 902, 122 A.3d 631 (2015); see also *State* v. *Carbone*, 172 Conn. 242, 254, 374 A.2d 215 (The reversal of a judgment annuls it, but does not necessarily set aside the foundation on which it rests. This foundation may be sufficient to support a judgment of a different kind, and may be such as to require it. A reversal therefore is never, standing alone, and ex vi termini, the grant of a new trial. If the error was one in drawing a wrong legal conclusion from facts properly found and appearing on the record, it would be an unnecessary prolongation of litigation to enter again on the work of ascertaining them. . . .), cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977)." (Internal quotation marks omitted.) *Channing Real Estate, LLC* v. *Gates*, supra, 326 Conn. 132–33.

[10] Practice Book § 84-11 provides in relevant part: "(a) Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the Appellate Court. *Any party to the appeal may also present for review adverse rulings or decisions which should be considered on the appeal in the event of a new trial, provided that such party has raised such claims in the Appellate Court.* . . .

"(b) Any party may also present for review any claim that the relief afforded by the Appellate Court in its judgment should be modified, provided such claim was raised in the Appellate Court either in such party's brief or upon a motion for reconsideration.

"(c) Any party desiring to present alternative grounds for affirmance, adverse rulings or decisions in the event of a new trial or a claim concerning the relief ordered by the Appellate Court shall file a statement thereof within fourteen days from the date the certified appeal is filed in accordance with Section 84-9. . . ." (Emphasis added.)